United States versus Stabile. So, Mr. Wray. Good morning and good day to the court. My name is Robert W. Wray and I represent the defendant, Appellant Salvatore Stabile. Do you want to reserve any time? With the court permission, I'd like to reserve three minutes. All right. No lawless search was ever conducted in this case. Well, it's had a consent to search, but it's never been a restriction to financial information. It's never been in any way. Why should the government be? Your Honor, there's a decision from this court recently called Reed v. Edmondson and all consent searches are considered in light of the totality of the circumstances. Right. And they're not deemed to be limitless. She limited it in terms of scope. It's true that there was not an express limitation with regard to time. Yeah. But the delay here was for three months before a warrant was sought and it's clear he never answered things back. Eighteen months passed before your client said, hey, I want those hard drives back, right? But he was unstakeable in provoking her consent. And it couldn't have been understood as anything other than a request for. But doesn't he have to be there to deliver and revoke the consent? Doesn't he have to contemporaneously be present with her to do that? If he's objecting while she's attempting to give consent, then maybe he would have an argument. But he wasn't there. That's perhaps an open question still. That's the Georgia v. Randolph decision and an associative decision as we cited in our brief. I think we are foreclosed on your case. Thank you. I know you are, Donna. I don't think with regard to personality, and that would be the computer hard drives in this case, we can make that argument. We're not believing him. I'm just saying I think before this court that issue was foreclosed. What we're not foreclosed from arguing, though, is that there was a three-month delay before Rothman did what he obviously intended to do, which was to search those drives for child welfare. He wasn't the lead agent in this matter reassigned to a very important security detail. But there may have been a problem, but he's not the only agent in America. And so we're not the only agent in New Jersey. And the case law is clear that administrative convenience alone is not sufficient to excuse, as a matter of delay, what is tantamount to a reasonable delay under the Constitution. Would it matter that you got these drives originally by consent rather than through a search warrant? Would that make any difference? I think the consent allowed for a seizure here. There's no question he hadn't returned yet. It was for financial crimes. And the expectation would be with deliberate speed that Rothman came with that, armed with that consent, would search those drives to determine whether or not there was evidence of financial crimes. If he found evidence, obviously, he was allowed to retain that, and that's presumed to be expressed in terms of the consent. And if he doesn't find that, then he's supposed to return them. But law enforcement was also supposed to find evidence here that he injected. And it's clear that they understood, because they had definitely applied for a state search warrant, that they needed a warrant in order to search and open up the files of that hard-filed death for evidence of financial crimes and for evidence of child pornography. As a result of Frank's violation, the child pornography authorization falls to the wayside. Right. And, well... Let's talk about plain view, then. What's your view on plain view about consent as a provider? I think we need to start, which the district court attempted to avoid, the first place that law enforcement looked. And the first place law enforcement looked was in that CASVID directory, CASA-VID-for-VINO. And the agent's testimony said it's the first place, though. Because it's apparent from the detective and the agent's testimony that that's where he went. He saw something that he thought was out of place. He had judicial authorization to look for child pornography, and apparently an instruction, because they knew there was some problem with the first state search warrant, to stop if he encountered it. But his testimony, my recross of him at the suppression hearing was, you know, Detective, maybe what we're looking for, maybe it was clear, even when he opened the directory itself, that he was looking for at least child pornography. Now, as he was laying there, he was looking also for financial crimes. He said he was ready to accept it when he says he was looking for child porn, but he only claims that he was looking for other crimes. The evidence that it's underbudgeted, because it's what's in his mind, he says, I was looking for both, right? I mean, if he's properly in the computer, and he's looking around, and he was properly in the computer because we have alarms, right? So he's looking around, and he says, it's not uncommon for criminals to mislabel things, hide things and stuff, other than what they say, the label might immediately be apparent. It would hold. So it was looking for financial crimes. What's wrong with him looking in that CASVIG file, and then seeing the names that show him there's a crime? It's usually wrong that the plain view doctrine only allows law enforcement to go where it's reasonably expected that they would find the evidence that they're authorized to look for. And what is it? It's a video directory. The CAS, K and Z mean something to Kazan. Yeah. I mean, it didn't just say VIG, right? It said CASVIG. In fact, it says CASVIG. Doesn't that tell the officer that there could be a problem there? It tells the officer what he'd expect to find in the video files, which is what it is, in fact. Do you think the files have child pornography in them? Well, in Kazan, Kazan is a term of art, but Kazan is something that's unfortunately become commonly known to people in law enforcement and us judges as well. And Detective Vanninian was clear in his testimony and forthright that that's, in fact, what it is he expected to find. If you open up that directory, the question is who in the house is looking for financial crime evidence, say counterfeit bills or something, and he opens a file cabinet, and in the file cabinet is a brick-shaped substance that says Coke on it. I mean, he can't take it. That would be a different situation. This is a situation where he goes into a file cabinet, and the label on the folder says inside this folder contains child pornography. Yeah, but suppose to extend that question, I'm doing the search, and I find this cabinet, and inside I find a bunch of dirty pictures of children. Can I go through all that to see if there was any financial material in it? Under no circumstances. No, you can't, because if it's behind a folder, and that folder is labeled something that suggests that there's not any chance that there would be evidence of child pornography. So all that has to do is put a label on there, dirty pictures of little kids, and I can't search it. Well, it's not quite analogous, because the CASBIT directory itself, unless you assume that it is completely mislabeled. Well, why can't you? That's the point. There's nothing technical about the file name that said, okay, this can't hold regular stuff in it. I mean, if we pursue your logic, Mr. Wray, couldn't all criminals who are using computers label things like, this is definitely not a financial crime folder? Okay. Send it right on there. I mean, the fact that it says CASBIT, why does that put it off limits? It doesn't. And it doesn't have a job. It's based upon the case law. There's no question that there are a number of cases out there that allow law enforcement to test, in a very limited way, the proposition. Do I have a mislabeling issue? And so, with regard to making the decision. So we could look at one of the videos there and confirm what it was. I don't think we could go that far. I think that this is consistent with the competence of drug testing. You could never videotape financial records and store them that way? It would seem to me a lot like a medical video, be it a how-to, a instructional guide, or a how-to for bank fraud. I don't think that's what we're looking for. You couldn't take pictures of, you know, documents? Pictures or PDF files would be enough to make you testify that what you expected and what you did see would be. We would reveal pictures if it was an EMF exception. The video files were not. He could use hashing tools and the in-case program to determine whether or not, working behind that CASVID directory, were the types of files that would be likely to contain financial crimes. He could at least go into the CASVID file, right? But go into the file and look to see what was there, right? Once he's in there, he sees the computer names, the file names, correct? I think if this court finds that he's allowed to go in, what he's not allowed to do and what he did do here was open up, he opened up not just one, he opened up 12 of the videos. How is the basis of a district court finding that he was in a legal search? Assume that the district court was right about that. The district court's next step was what? The district court's next step was to consider the inalienable discovery doctrine. So why is the district court wrong about that? Well, we go back to the case that brings us the inalienable discovery doctrine, which is Nix v. Williams. Our argument in the district court is that there was a taint that occurred as a result of peeking into, not in a limited way, but a full-on search into those 12 videos. What's the taint? And I won't burn the record here with the names of the files, but it did seem to me that these were the sorts of file names which would pretty clearly indicate there's child porn in there. What is it about the act of Officer Vandia looking at the files that taints the later going to a magistrate and saying, look at what these file names are? What taints it is that he looked at it, saw it, testified at the suppression hearing that he needed to confirm 12 of them for purposes of determining whether to launch a prosecution, and then only at that point contacted federal law enforcement with regard to an application to go to a federal search warrant? We have to accept your argument that the file names themselves were insufficient to communicate to a neutrally attached magistrate that there was a problem, right? I don't think it was a problem. I think there's a basis to uphold the notion that the file names were descriptive enough to supply probable cause. There's one wrinkle in this case, and the wrinkle is that there was an illegal search that started all of this at the residence at the time of the incident in which law enforcement looked at those DVDs that had labels, analogously descriptive labels, and the thought was that there must be child pornography behind those DVDs, and they searched them without a warrant at presumably at the residence at the time. I see that my time is up. If I may just simply respond. The DVDs had been searched illegally. That was the first illegal search, and it was found not to contain child pornography but adult pornography. The consequence of that was law enforcement, at least as a suppression hearing testimony reveals, I think was concerned about whether or not there really was going to be sufficient evidence to supply probable cause to warrant the next step in obtaining that warrant. And that was what was noticed in the first start of our application. Thank you so much for your time. Thank you. We'll have you back in a moment. All right. Mr. O'Rourke. I'm pleased to call John O'Rourke of the United States. I just wanted to start with the... It may very well result in a precedential opinion. Do you really think we should be justifying the kind of conduct that these law enforcement officers engage in? They screw it up at every stage of the proceedings. The guy goes away for how many months, and then every month has a defect. What exactly is the problem here? I think we've learned them all wrong. And I think, Mr. Court, we ought to be able to recognize that there were mistakes made. Should we write an opinion saying that's okay? Is this the type of model you want future U.S. attorneys and case agents to look at and say, No, it doesn't matter. I can put down any old thing. We'll let it slide. Shouldn't we let this slide? Well, I guess that there were certain mistakes made, but I think, on the whole, we mostly corrected those errors. But this was probably not right. Well, first, if you're going to consider the length of time of error, I think it's important to note that this was a consent search. He said that he used computers in the system. How does that matter, Mr. Romano, if it's known that this is jointly on property? Are you suggesting that the consent of, assume it was an automobile and it was the guy's only way to get around. If the co-owner says, Yeah, no, go ahead and take a look at it, is your position that the government then can just take that car and pound it indefinitely and the guy has to walk, take a bus, lose his job? If the defendant shows up and says, You know, I left my car back, then that would be a different story. I would put the government on notice that he wants this back and he has to search it. The government's not already on notice that people don't want their stuff taken away. Well, in fact, in this case, we have. You're saying I revoked my consent, I revoked the consent. That's not enough to put you on notice? I think that's enough to say, Well, we need a house now and we're considering searching in your house. But he has a condition on the record here. The defendant said. I realize that. He didn't say the magic words. He doesn't say that. He said, I just assumed that perhaps they wouldn't find anything.  He didn't want the stuff back. He didn't want it searched. He just wanted to, you know, let's hope it goes away. I don't even remember this. If he had asked, I assume he would have said, No, I have this computer. I'm going to come back. Well, then the government would have. Hopefully. I mean, again, it wasn't optimal. But, you know, he's doing something. Yeah. I don't know if it worked. What's the problem here? Well, it does take quite some time for the computer to search this. But in this case, he was doing, you know, important detail work. I was busy. That's the. That's the rationale. We've got your stuff because I'm busy. Is that really fair to say never objected to that? I mean, we hear Mr. Ray and Mr. Ray says he said that. Don't take my stuff. It's my stuff. And they take it. And I guess the question I've got. I don't want to speak for him. But the question I've got is, what's the right way to address that issue? I mean, do you recognize that that might be a problem? Your Honor, if this were to be done over again, I think they would have acted differently and would have acted more quickly. But I think the fact that he comes back and says, look, I mean, in King, we have him standing there saying, don't take it. And the agents are allowed to take it and allowed to conduct a search at some point. That's not. I don't think the issue is taking it and searching it. And even your opponent agrees that he therefore closed from saying the government could take it away based on King. The question is, can they take it away and keep it as if it's theirs to keep forever? Well, no, Your Honor. I think it's a little over two months. It's a long time. But, again, he didn't ask for it back. And quite frankly, there's no cases on the issue saying, you know, you have to do this right away. Everything the defendant says, he needs to get a piece of mail from you. He needs to get a luggage. I understand that. Of course, we have to do it quickly in this situation. So, again, if the government didn't demand it, I think there's no way to do it in a faster fashion in this case. How about Plainview? Your position is that it completely applies. There's no limit. Your Honor, it's not that there's no limit. I think if you look at this case, there's a couple of places where you look at Plainview. When you go into that Kasdan file or whatever the name of that compounded thing is, after you've looked at the first video, wouldn't you have a pretty good idea of what the rest of them are going to be? Is there really any justification to look at all, what was it, 12 or however many there were? Look, in the government's position, I think I have three answers to that. The first one, we can go through that later. It's not directly, it doesn't answer your question directly. Sure. It depends on us. The second answer is that once you see a file name with a name on that that is no longer, this could be child pornography, he can look at it. I mean, this is like men. You know, you have the zombie who says Jacob. Right. He doesn't have to have a real warrant to open it up. He's allowed to look at that. Right. Why is it in a closed container? Your Honor, it's like a filing counter. It's a closed container and every single thing on the computer is a closed container. And I don't think that that would be the law. You have a filing cabinet, you have a copy on the front of the file that says what it says. You're allowed to look and see what it is. No, I mean, in that gut, everything is a closed container. I mean, if the hard drive had things that said, you know, 2004 bank statement, it said mortgage issues, there are a host of descriptions one could imagine that would lead the investigator to believe it was within the scope of the warrant. But other things, like perhaps cabs, would be open up. Well, it would seem to be closed containers, wouldn't it? I don't think so, Your Honor. I mean, if there's a warrant on that, it says what it is. And there's cases out there, I mean, one case, you know, that you don't have to open up. You don't even have to open up. You can go ahead and open up. Well, all, however many there were there. You could look at every one of them. Well, Your Honor, I think as long as he's looking at files that could contain check fraud, I think he can do it. I mean, it's a simple matter. I mean, let's say he searched the whole computer. Well, then everything could contain check fraud. No, in other words, there's limitations, Your Honor. And I think I would argue that. What exactly are the limitations? For example, Kerry, which we can, we think is well-decided and is distinguishable. He's looking for documents. The first thing he knows, he pulls up all the images. Well, those images aren't going to have the stuff he's looking for. That would have been, you know, outside the scope of the warrant. And that's the difference in this case. He's looking for financial information. And he's looking at these video files. Well, how would you expect to find the financial information in the video files? Well, I think the first thing that's important is that because the evidence has a legal value, that doesn't mean his video isn't there. But the thing is the legal value. Well, we'll wait for that. Now, let's move one step away. Sure. I thought he was going to use the tool to pull up all the videos. He doesn't mean that the defendant gave it. And it's almost, and I think Your Honor pointed out, it would be almost absurd to say because he labeled this something that looks like another crime, now you can't look at it. Whereas if it were a crime, you're not going to trust what the defendant says. We can take a look, take a quick look. Is this financial fraud? Yes or no. But if you label it something that's another crime, now you can't look at it. It doesn't make any sense. And again, he didn't know. He didn't know. Take the next step. He didn't know that these were videos yet. He's labeled something. That doesn't mean he knows. End case gives him the opportunity to file a signature analysis, as I understand it. The reason is he clicks on that. Even if it's just mislabeled, they don't look at them properly. This means he knows what it is exactly. Do you watch the first five seconds of it? Do you watch each one to the end? I don't know the answer to that. He must have removed them. You can watch each video to the end. You can watch the whole thing. If it's a container, it's not going to allow you to use any quick links to it. I think that that's the case. Plus, the names on his file say, this is child law. And I think it's important. How far down the road do you go with this? Assume that it was an ornock. It was file name. But it had a video extension on the file name. Does he get to open it? Because even though it's got a video extension on the file name, it might still not be a video file. I think as long as he didn't use it to hold up videos, he can. All right. And so then if he opens it up and he sees, hey, it really is a video, can he keep watching it, thinking, well, maybe somebody's going to hold up a chapbook? I mean, at some limit, does he have to say, this isn't it? I think a certain limit should. What is the limit? That's the question I have when you say, well, let me ask you, what's the limit? It's the same as an emulator in a paper search. You know, you're looking for a library and you're not going to open a shoebox. If it could contain it, you open it up. Maybe it doesn't say you open a large container, but it could contain a library. It's fact-intensive. It's fact-intensive, and it's going to vary from case to case. What if the shoebox is set on the top of a dirty picture? Can you say, okay, now I can open this? I don't think that's the case. It goes back to Judge Hart's question. Once he sees those file names, he's got a basis for thinking, there's probably child porn in there, but does that mean he can open them up? I think it definitely can, because the accredited nature is immediate impact. Again, I think those two things are not mutually exclusive. Immediate impact does not mean what the defendant wants it to mean. It means probable cause. If you have probable cause, there's child porn in that box, and also think you can have checks in it. The government gets to have it both ways. The government gets to look at folders that don't appear to contain financial information because the government doesn't need to trust that the defendant is accurately labeling them. On the other hand, when a file folder name suggests child pornography, like Kazaa or Kazvid, the government gets to assume that he's honest about it and gets to look at that. I don't think they're mutually exclusive. He has probable cause at that point. He can look at it because it's in plain view. If the reason it's probable cause to open a Kazvid file is because Kaz means something, how does he have probable cause to open a file to search for financial crimes when it says we look at Yankee's highlights? I'm going to take it first of all out of the way that he opened the Kazvid folder because he thought it could have financial crimes. He also thought it could have child pornography. The later files, which I'm not going to say a lot about, are very impriminating. I mean, those give him probable cause to believe they have what they have in it. But he doesn't get to trust any of that. I mean, in the defendant's approach, and I think this is something that some of the others are saying, he could label this a different crime. There would be in this last event in the world and now on, a little bit of files under a different crime name, and that would mean, apparently, it would be a defendant. But they're the archivist's. Well, that doesn't mean they can pick any crime. Well, they can't be an archivist. Because I think the defendant would believe that an archivist's name, if everyone's allowed to take it up, makes sure it's not unstable. But in the defendant's approach, if it's a bigger crime, now all of a sudden we have to update another warrant to open it up. Isn't there sort of a perverse incentive going on here, though, if your argument is he hadn't used the tools to pull up video files? So he can look at everything. I mean, isn't the incentive that is extended to law enforcement at that point, don't use the technical tools that are available to you. Just start looking at everything. I don't think so. I don't think there's an incentive to do it. I mean, these searches take a very long time. There's a lot of files. I don't think there's a sufficient exposition in any way. I mean, you found this right away. If you have tools that could find what you're looking for, I think NAM is a good case, the Seventh Circuit. In that case, there's tools out there where you can use the hashing analysis to find known images of child pornography. If you can do that, that's a great tool. You know if there's child pornography on the computer. But if you're not looking for child pornography, then you can't use that tool. That's a similar thing. Mr. O'Reilly says there's a taint that prevents the application of the doctrine of inevitable discovery. What do you say to that? I mean, that's just not the case. First of all, I think independent source applies maybe a little bit easier. But, I mean, every independent source in the Netherlands could be the case. Yes, he found the threats. That's the whole point. The question is, in independent sources, would the justice have given him more money? His answer is obviously yes. All he had were filenames that just sat outside the bar. And he said, he didn't have to look at the warrant. And here, the fact-finding is a factual issue. I think the fact-finding is wrong about that. It's a fact-finding. Why would the agent have gotten the warrant anyway? And here, there's just sort of a decision set. He did not believe he would have gotten the warrant anyway. And I think that's supported by the fact that he already got a warrant for less incriminating filenames. The fact that he didn't have a warrant. He just put the filenames. It's clear that he thought that was a sufficient problem to us. So, I think you can't go around that. And, again, you're right. Every case of that nature, independent source in the Netherlands, yes, you found it first. That doesn't take the entire thing. Any other questions? All right. Thank you. Thank you very much. Thank you. Thank you, Your Honor. Your Honor, the answer to Your Honor's question about when is it enough, I think is answered by the Fourth Amendment. What we didn't discuss is that there's a warrant requirement. And to hold under the Ineligible Discovery Doctrine a case like this where you have a single detective who searches 12 videos doesn't stop working to carry the case. And in the cases of many of the other circuits, where you can say you're just here to test a proposition that something might have been mislabeled. And as soon as you saw what it was, you stopped, and then you went to get a warrant. That didn't happen here. If this court is to affirm what the district court did here, what it is saying, essentially, is that if you have probable cause, and we can discuss the fact that if the file says, quote, unquote, to use the court's expression, dirty pictures, perhaps at that point you have probable cause. But probable cause means you have probable cause to go to a detached magistrate to have a warrant issued. And if you then, after the fact, say, well, there was an illegal search, yes, he went through the 12 videos, and he shouldn't have done that. There's a constitutional violation, as the district court found. But don't worry about it. He wouldn't have been prompted. The irreality of that search didn't prompt him to go get a warrant. It was just those file names that prompted him to go get a warrant. First of all, that's belied by the record. That's not what happened. When you say that's belied by the record, how is that belied by the record? I mean, as Mr. Romano just pointed out, the affidavit doesn't say, hey, this is what I saw in those files. It's got the file names, the file names which are, I think you'd agree, pretty incriminating all by themselves, right? It didn't affect the magistrate, correct? It didn't affect the magistrate judge's determination, so that's one part of the independent source test. So what it did, if that can answer your question, is it affected the other thing? The detective, Detective Romano, was prompted by what he saw in those videos to go to Agent Albany to have a probable warrant. Isn't that exactly a question of fact? Well, isn't that exactly the question of fact that Judge Chester found against you? I have two answers to that. One, I think that fact is clearly wrong. But the second is that it was a bit of a sleight of hand of the district court because it said federal law enforcement was not prompted by what was seen in order to go offer a warrant. And the collective knowledge doctrine, it's not just what Agent Albany's knew. He was a federal agent. It's also what Detective Venita saw and found. And when you put what happened with Detective Venita together with what Agent Albany's did, I don't see how you can say that the one didn't affect the other and that there's not a taint there. And if this court finds a taint, whether by finding that the finding was clearly wrong or is below, I say that my time has expired. I'm just finishing. If there's a taint found, that means the independent source doctrine fails. And the inevitable discovery doctrine should also fail because if you don't find in that fashion, all you've done is simply said, law enforcement, if you find probable cause and you're otherwise a lawful heathen in someone's hard drive, don't worry about getting a warrant. Search your heart's content. And all you've done is sanction an N-100 warrant. We think that's unconstitutional. Isn't that a frontal assault on the inevitable discovery doctrine? I don't think so. I don't think that we're asking for, as we argued in part of the brief, what the Ninth Circuit did in confidence of drug testing, which was thrown out by the Enbonne Court, right? Just with respect to the argument that the Plainview Doctrine should be abandoned in connection with computer searches. We're not arguing that. We understand the Plainview Doctrine is there, and we always want to appropriately interpret the Plainview Doctrine. And for the reasons that we suggest, we don't think that those videos were in Plainview. We don't think the filenames or what was behind the filenames were in Plainview. The filenames themselves were in Plainview. That, in our opinion, was probable cause to look at a warrant in order to see what's behind those filenames. So that's what the carrier court held. The filenames were in Plainview. But if the filename plainly denotes the incriminated character, and if it's immediately apparent there's plenty of testimony or I'm indicating a double standard here, you can't look at it and say, well, it may not satisfy that test, but the names of the individual files that were in the decider state were really described, and that's apparent. Well, the carrier character of those is apparent. It may take you a little while to get the account, because in this case, the agent would have a detective who was quite clear that based on my filenames alone, I don't know what I'm going to find once I open it up. It could be mislabeled. And in this case, the DVDs were suggested. You could argue that it was immediately apparent that the DVDs had talked about me, and they didn't. Okay. So that's your point. We have your argument. Thank you very much. All right, well argued. Thank you very much. We'll take another advisement.